UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| ANTONIO RAPHEAL WALKER, | ) |
|---|---|
| Movant, | ) |
| v. | ) No. 3:19-cv-00516 |
| | ) Judge Trauger |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## MEMORANDUM

Antonio Rapheal Walker filed a pro se motion under 28 U.S.C. § 2255 to vacate a sentence previously imposed by this court. *See United States v. Walker*, No. 3:18-cr-00029, Doc. No. 31 (M.D. Tenn. Nov. 27, 2018) [hereinafter cited as "Crim. Doc. No. ___"]. The government filed a response (Doc. No. 16), and the movant filed a reply. (Doc. No. 17.) The movant's claims all depend on his argument that there was not a sufficient factual basis to support his guilty plea to possessing a firearm in furtherance of a drug trafficking crime. Because the record shows otherwise, the movant is not entitled to relief under Section 2255, and this action will be dismissed.

**I.    Background**

The movant pleaded guilty to a heroin-based drug trafficking crime, possessing a firearm as a felon, and possessing a firearm in furtherance of the heroin-based drug trafficking crime.[1] (Crim. Doc. No. 31.) His plea was pursuant to an agreement under Federal Rule of Criminal Procedure 11(c)(1)(B). (*See* Crim. Doc. No. 23.) This agreement included a statement of facts supporting the movant's convictions and, by signing the agreement, the movant admitted that "those facts establish his guilt beyond a reasonable doubt." (*Id.* at 4, 12.) The movant reaffirmed

---

[1] This latter offense is a violation of 18 U.S.C. § 924(c)(1)(A). The court will refer to it as a "Section 924(c)" offense going forward.

his admission to the truth of these facts under oath at the plea hearing. (Crim. Doc. No. 34 at 9, 17.)

The government recited the admitted facts set out in the plea agreement at the hearing:

On October 23rd, 2017, Metro probation officers requested Metro Nashville Police Department detectives' assistance with the search of Walker's residence . . . . Upon arriving at the house, the probation officer informed Walker that detectives were present to help search the residence.

Walker consented and allowed detectives to come inside the residence. The probation officer and detective walked upstairs and searched Walker's bedroom. Once in Walker's bedroom, the detective opened the top drawer of the bedside nightstand and observed a small bag containing a large sum of money. The money inside the bag had rubber bands around it. It was folded into separate stacks.

Upon moving a pillow at the head of the bed, the detectives observed a loaded Beretta nine millimeter hand gun with a round in the chamber underneath a pillow. While looking through the dirty laundry hamper in Walker's bedroom, the probation officer recovered two plastic grocery bags concealed underneath clothing inside the hamper. Upon opening those bags, each bag was found to contain several smaller individually packaged plastic bags containing heroin.

While in Walker's bedroom, the probation officer and detective observed a locked closet door which required a key to open. The probation officer asked Walker for the key to open the closet door. Walker complied and gave the officer the key, which was on Walker's person at the time.

Upon opening the locked closet door, a small safe was observed on the floor. The key to open the safe was found in Walker's bedroom. Upon opening the safe, three loaded firearms were observed inside[:] a Glock 23 .40 caliber hand gun confirmed to be stolen by police records; a Llama IX-D, a .45 caliber handgun[;] and a Taurus PT740 .40 caliber handgun. Inside the closet was also a small bag containing money.

Next, detectives observed the kitchen. Detectives located in a cabinet near the oven a Crown Royal bag filled with approximately four ounces of heroin and a digital scale. Next, detectives and the probation officer searched Walker's Honda Odyssey parked in the driveway. Upon searching the vehicle, they found $700, which was found inside a pair of pants along with Walker's identification.

After all the property had been removed, detectives advised Walker of his Miranda rights. Walker agreed to be interviewed but initially did not make any statements. After detectives called for a transport car, Walker requested to speak with detectives outside the presence of his son, Antonio Walker, Jr. Detectives stepped outside to

> speak with Walker. Walker then admitted that the brown powdery substance found in his bedroom and kitchen were heroin. He claimed that the heroin belonged to him. He admitted to selling heroin and stated he had purchased a kilo of heroin for approximately $70,000 four days prior to the search. Walker stated he makes approximately $1600 a month doing masonry work but does not have any check stubs because he gets paid under the table. Walker stated that only he and his son, Antonio Walker, Jr., live at the residence.
>
> Walker claimed to have no knowledge of the firearms found inside the safe in the closet or the firearm found underneath the pillow. When asked if the money found inside his bedroom belonged to him or not, Walker refused to answer the question.

(*Id.* at 14–16.) The court found these facts sufficient to support the movant's plea. (*Id.* at 19.)

As part of the plea agreement, the government agreed to recommend that the court calculate the effective sentencing guideline range to be 147 to 168 months. (Crim. Doc. No. 23 at 9.) The government also agreed to recommend a sentence of 147 months' imprisonment. (*Id.* at 9.) The guideline range actually calculated by the Probation Office and accepted by the court was 262 to 327 months, but the court ultimately determined that the government's recommended sentence was sufficient but not greater than necessary to comply with the purposes of the sentencing statute, 18 U.S.C. § 3553(a). (Crim. Doc. Nos. 31, 32.) The court therefore sentenced the movant to 147 months' imprisonment. (Crim. Doc. No. 31 at 2.)

## II. Legal Standard

"A motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). "When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required to determine the truth of the petitioner's claims." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (internal citations and quotation marks omitted). "An evidentiary hearing

3

is not required," however, "'if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

**III.     Analysis**

The movant pleaded guilty to possessing a firearm in furtherance of a drug trafficking crime, and he now asserts that the government could not prove the "in furtherance of" element of this offense. This element, discussed in more detail below, requires the government to prove "a specific nexus between the gun and the [drug] crime charged." *See United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004) (quoting *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001)). The movant says there was no such nexus in his case, so: (1) he is actually innocent (Doc. No. 2 at 3–4); (2) there was an insufficient factual basis for his plea (*id.* at 5–7); (3) counsel should not have advised him to plead guilty to this offense (*id.* at 8–9); and (4) counsel should have objected to this count of the indictment. (*Id.* at 9–11.)

The government argues that the movant's claims are waived by his plea agreement, procedurally defaulted, and without merit. (Doc. No. 16 at 6–11.) The court disagrees on waiver and finds it inappropriate to rule on procedural default grounds, but agrees that the movant's claims fail on the merits.

**A.     Waiver**

As relevant in this Section 2255 case, the appellate waiver provision of the plea agreement provides that the movant "waives the right to challenge the sentence imposed . . . in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to . . . challenge the adjudication of guilt or the sentence imposed

in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel." (Crim. Doc. No. 23 at 10–11.)

By its plain terms, this waiver does not apply to the movant's claims of ineffective assistance of counsel. And the movant's other claims are not barred because they are challenges to his Section 924(c) *conviction*, rather than his *sentence*. *See Pettus v. United States*, No. 3:18-cv-00736, 2021 WL 354083, at *2 (M.D. Tenn. Feb. 2, 2021) (applying *In re Brooks*, No. 19-6189, 2020 U.S. App. LEXIS 6371, at *3 (6th Cir. Feb. 28, 2020), and collecting this court's prior cases) (interpreting virtually identical appellate waiver language to bar collateral attacks to a sentence but not a conviction). Accordingly, the movant did not waive his ability to bring the claims in this Section 2255 motion.

### B.     Procedural Default

"[C]laims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

The movant did not file a direct appeal. The movant's claims of ineffective assistance of counsel, however, "are properly raised in a section 2255 motion." *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (citing *United States v. Graham*, 484 F.3d 413, 421–22 (6th Cir. 2007)). These ineffective-assistance claims can also "constitute cause for a procedural default" of the movant's related claim of factual insufficiency. *Id.* (citing *Hodges v. Colson*, 711 F.3d 589, 602 (6th Cir. 2013)). An actual-innocence claim can excuse a default as well. *See Ray*, 721 F.3d at 761. Given the substantive overlap between the movant's claims, it is more efficient for the court to

5

Case 3:19-cv-00516    Document 21    Filed 08/24/22    Page 5 of 11 PageID #: 91

address them on the merits. *See Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1077 (6th Cir. 2015) (quoting *Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009)) (noting that a court may "reach[] beyond the procedural-default analysis to address the underlying claim on the merits when it 'present[s] a more straightforward ground for decision'").

**C.    Merits**

The movant pleaded guilty to violating Section 924(c) by possessing a Berretta pistol in furtherance of a heroin-based drug trafficking crime. The movant asserts that the government could not prove the required nexus between the gun and the drugs. But the relevant caselaw—including the cases cited by the movant—supports the movant's conviction.[2]

"[D]efendants commit this offense if they possess a gun to aid drug trafficking." *United States v. Maya*, 966 F.3d 493, 500 (6th Cir. 2020) (citing *United States v. Street*, 614 F.3d 228, 236 (6th Cir. 2010). But "the possession of a firearm on the same premises as a drug transaction [does] not, without a showing of a connection between the two, sustain a § 924(c) conviction." *Mackey*, 265 F.3d at 462. The government must prove "that the firearm's presence in the vicinity of the crime was something more than mere chance or coincidence." *Combs*, 369 F.3d at 933.

"To help answer this 'in furtherance of' question," the Sixth Circuit has "identified a non-exclusive list of six factors," including: "whether the gun was strategically located so that it was quickly and easily available for use, whether it was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Maya*, 966 F.3d at 501 (internal citations and quotation marks omitted). These factors are not strict prerequisites to finding a sufficient nexus. *Id.* ("[J]ust because some factors

---

[2] The court notes, as a preliminary matter, that the movant's freestanding claim of actual innocence is not cognizable as an independent ground for relief. *See Avery v. United States*, No. 17-5473, 2017 WL 9248941, at *3 (6th Cir. Nov. 13, 2017) (citing *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007)) (denying certificate of appealability on such a claim).

are absent does not mean that there is insufficient evidence to sustain a conviction."). Instead, they aide the court in its "holistic analysis" of the issue. *See United States v. Landeros-Salcedo*, 845 F. App'x 415, 418 (6th Cir. 2021) (quoting *Maya*, 966 F.3d at 501) ("[The Sixth Circuit has] recently cautioned against a strict adherence to the factors as discrete considerations, favoring instead a 'holistic analysis.'").

Here, the undisputed facts are plainly sufficient to support the movant's Section 924(c) conviction. First, the Berretta pistol was easily accessible under the movant's pillow in his bedroom, and it was strategically located in the same room as: (1) a large sum of money in a nightstand; (2) several individually packaged bags of heroin underneath clothes in a hamper; and (3) a locked closet containing a locked safe with more money and three more loaded guns. *See United States v. Serrano-Ramirez*, 811 F. App'x 327, 340 (6th Cir. 2020) (rejecting challenge to sufficiency of Section 924(c) evidence where "a rational juror could conclude that [the defendant] strategically kept [a gun] in his bedroom, where it was easily accessible and near his stash of cocaine"). A gun being located "in the same room" as illegal drugs is highly probative of a sufficient nexus for purposes of Section 924(c). *See United States v. Ham*, 628 F.3d 801, 809 (6th Cir. 2011) (discussing *United States v. Swafford*, 385 F.3d 1026, 1029 (6th Cir. 2004)).

The gun was also loaded, with a round in the chamber. It was a nine-millimeter handgun, "which is a small weapon that is easily transported or concealed on the body, making it more likely to be used 'in furtherance' of a drug crime than would be, for example, a rifle." *United States v. Gill*, 685 F.3d 606, 611 (6th Cir. 2012) (making this observation with respect to a larger forty-five-millimeter handgun). It was illegal for the movant to possess the gun because he was a felon. And there was evidence of substantial drug activity, including the movant's admission to selling heroin, his admission to purchasing a kilogram of heroin four days before the search, and the digital scale

found in the movant's kitchen. *See Landeros-Salcedo*, 845 F. App'x at 418 (finding that an admission to ongoing drug trafficking along with "indicia like the scale and the bags" supported a finding that a defendant engaged in substantial drug activity). Viewing these circumstances together, there was clearly evidence of a sufficient nexus to support a Section 924(c) conviction.

The movant argues otherwise with citations to *Mackey* and *Maye* (Doc. No. 2 at 7)—both binding Sixth Circuit authority—but those cases are readily distinguishable. In *Mackey*, for example, the Sixth Circuit found sufficient evidence of a nexus based on many of the same factors present here. 265 F.3d at 462–63 (finding that the relevant firearm was loaded, illegally possessed, easily accessible, and located near drugs and a large sum of cash at the time it was recovered). True, the *Mackey* firearm was found in a house where drug sales actually occurred, and there was no evidence that the movant sold drugs from his house. (*See* Doc. No. 2 at 3, 5; Doc. No. 17 at 10, 13.) But the government need not prove a nexus between a gun and individual drug sales; rather, the required nexus can exist where a defendant "owns a gun 'to protect the drugs, the proceeds of drug sales, or the dealer himself.'" *Maya*, 966 F.3d at 500 (quoting *United States v. Bailey*, 882 F.3d 716, 721 (7th Cir. 2018)). The movant's loaded Berretta pistol meets this "possession-for-protection purpose," *see id.*, as it was located under his bedroom pillow, next to a large sum of money in the nightstand, near individually wrapped bags of heroin that he admitted to selling, and in the same room as a locked safe with more loaded guns and money. More is not required.

*Maye* likewise provides no relief. There, the Sixth Circuit found that a defendant did not understand the necessary elements of his Section 924(c) offense where he expressed confusion during a colloquy, and the district court responded by expressing "a mistaken understanding that" the "in furtherance of" requirement "could be established simply by evidence that a gun was present on the premises where a drug sale occurred." *See Maye*, 582 F.3d at 626–30. Here, by

8

Case 3:19-cv-00516  Document 21  Filed 08/24/22  Page 8 of 11 PageID #: 94

contrast, no party expressed confusion about the elements of the Section 924(c) offense, so the court had no obligation to explain the "in furtherance of" requirement beyond reciting it as an element of the offense. *See United States v. Dennis*, 549 F. App'x 408, 414–15 (6th Cir. 2013) (rejecting defendant's argument that "the court had an obligation to elaborate on the phrase 'in furtherance of' to ensure that he knew that the mere presence of a gun was not sufficient," where there was no indication that "a party, or the court itself, was confused about the elements of the offense"). The court did just that at the plea hearing. (*See* Doc. No. 34 at 19 (explaining that the government was required to prove "that the firearm was possessed to further your drug trafficking").) And here, unlike in *Maye*, there was ample evidence to find a sufficient nexus, as discussed above. *See Maye*, 582 F.3d at 631 n.3 (quoting *Combs*, 369 F.3d at 933) (finding that the government's evidence established only "that the firearm's presence in the vicinity of the crime was . . . mere chance or coincidence").

      The three out-of-circuit cases cited by the movant do not help his argument either. (Doc. No. 2 at 7.) Although these cases are not binding, the court may consider them to the extent they are persuasive. *Keene Grp., Inc. v. City of Cincinnati, Ohio*, 998 F.3d 306, 315 (6th Cir. 2021) (*Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 278 (6th Cir. 2010)). One case, however, found sufficient evidence to meet the "in furtherance of" requirement based on facts even *less* persuasive than those present here. *See United States v. Rush-Richardson*, 574 F.3d 906, 909 (8th Cir. 2009) (guns and drugs found in different rooms). And the two cases finding an insufficient basis for the required nexus had facts that are far different from the movant's. *See United States v. Rios*, 449 F.3d 1009, 1014–16 (9th Cir. 2006) ("The firearm was unloaded and hidden under a dresser in a drug-free residence that was in another part of town from the locus of the drug activities."); *United States v. Palmer*, 456 F.3d 484, 490 (5th Cir. 2006) (finding insufficient factual basis for a plea

9

where "[the defendant] kept his gun locked and unloaded" and "thrice [] denied [he possessed the gun] in furtherance of trafficking").

For all of these reasons, there was a sufficient factual basis to prove the "in furtherance of" requirement for the movant's Section 924(c) conviction. His claim of factual insufficiency, therefore, will be denied. *See United States v. Mobley*, 618 F.3d 539, 545 (6th Cir. 2010) (quoting *United States v. Tunning*, 69 F.3d 107, 112 (6th Cir. 1995)) ("[T]he district court may determine the existence of the . . . factual basis from a number of sources, including a statement on the record from the government prosecutors as well as a statement from the defendant.").

The movant's claims of ineffective assistance of counsel—both premised on his faulty assumption of factual insufficiently—are without merit as well. "To prove an ineffective-assistance claim, a movant must show that his attorney's performance was objectively unreasonable and that he was prejudiced as a result." *Pettway v. United States*, No. 20-1997, 2021 WL 5288990, at *2 (6th Cir. Apr. 8, 2021) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). It was not objectively unreasonable to advise the movant to plead guilty to violating Section 924(c) because the undisputed facts supported a finding of guilt. *See Cross v. United States*, No. 1:20-cv-64, 2020 WL 4041437, at *4 (E.D. Tenn. July 17, 2020) (rejecting claim that counsel was ineffective for advising a defendant to plead guilty to a Section 924(c) conviction where the uncontested facts, "if proven at trial, would have been sufficient for a reasonable jury to convict [the movant] of possessing firearms in furtherance of a drug trafficking offense"). Nor was it ineffective for counsel to fail to raise a meritless objection to the Section 924(c) charge. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (citations omitted) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

10

**IV.     Request for Evidentiary Hearing**

The movant's reply includes a request for an evidentiary hearing. (Doc. No. 17 at 15.) For the reasons explained above, "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief," so the movant is not entitled to a hearing. *See* 28 U.S.C. § 2255(b).

**V.     Conclusion**

The movant is not entitled to relief under Section 2255 and this action will be dismissed. Because this is a "final order adverse to" the movant, the court must grant or deny a certificate of appealability (COA). Rules Governing Section 2255 Proceedings 11(a). A COA requires "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), meaning "that reasonable judges could disagree with the district court's resolution of his constitutional claims" or "could conclude the issues presented are adequate to deserve encouragement to proceed further." *Savoca v. United States*, 567 F.3d 802, 803 (6th Cir. 2009) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). For the reasons stated throughout the court's analysis, the movant has not satisfied these standards, and the court will deny a COA.

An appropriate order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge